## HAAS *v.* ALTIERI.

*(City Court of New York, General Term. July 1, 1892.)*

CONVERSION OF CHECK—EVIDENCE.

> In an action for the conversion of a check drawn by the owner of a building to defendant, and by him indorsed payable to the order of plaintiff, it appeared that the check was intended for plaintiff, contractor for the framework of the building. Defendant refused to deliver the check, on the ground that he was kept out of money due him by plaintiff's failure to put in a tier of beams. There was evidence that the beams were not put in because defendant had not carried up the walls high enough. *Held,* that a verdict for plaintiff should not be disturbed.

Appeal from trial term.

Action by Frederick Haas against Pietro Altieri for conversion of a check. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before McGown and Fitzsimons, JJ.

*Thornall, Squiers & Pierce,* for appellant. *Hays & Greenbaum,* for respondent.

McGown, J. The complaint of the plaintiff shows to the court (1) that at and prior to the times hereinafter alleged the plaintiff was, and still is, the owner of the following chattels, that is to say: One check, dated September 29, 1890, on the Union Trust Company for the sum of $1,000, and payable to the order of Altieri Bros., indorsed on the back: "Pay to the order of Frederick Haas. ALTIERI BROTHERS." (2) That said defendant, on or about the 29th day of September, 1890, wrongfully detained, and still wrongfully detains, the said chattel from the said plaintiff. That prior to the commencement of this action the plaintiff duly demanded from the defendant the return of said chattel to the plaintiff, but the said defendant refused, and still refuses, to return the same to this plaintiff. (3) That the chattel was, at the times

aforesaid, of the value of $1,000. (4) That by means of the wrongful acts aforesaid, the plaintiff sustained damage to the amount of $1,000. The defendant, in his answer, (1) denies each and every allegation contained in the first paragraph of plaintiff's complaint. (2) He denies that this defendant, on or about the 29th day of September, 1890, wrongfully detained, and still wrongfully detains, the said chattels alleged in the first paragraph of the complaint from the said plaintiff. He denies that prior to the commencement of this action the plaintiff duly demanded from this defendant the return of said chattel to the plaintiff. (3) He denies, upon information and belief, that said chattel was at the times alleged in the complaint of the value of $1,000. (4) He denies each and every allegation contained in the fourth paragraph of the complaint.

The facts, briefly stated, are as follows: The plaintiff made a contract with one Eva Stafford, on July 10, 1890, whereby he agreed to do certain framing work, and furnish certain materials, on six houses, to be erected upon the south side of Fifty-Third street in the city of New York, for the sum of $6,000, to be paid as follows: One thousand dollars when the first tier of beams is on the six houses; $1,000 when the third tier of beams is on; $2,000 when the fourth tier of beams is on; $1,500 when the fifth tier of beams is on; and $1,500 when the sixth tier of beams is on. It appears at folio 54 that $1,000 were to be paid to the plaintiff when the first tier of beams was on, and that the defendant agreed that the plaintiff should be paid the aforesaid sum of $1,000 out of the first payment to be made to the defendant, who was the contractor for excavating the cellars for the same premises, and that the $1,000 in question taken from Altieri's payment were to be paid to Altieri out of the fourth and fifth payments on the plaintiff's contract, $500 on each payment. In order to insure payment of the $1,000 to the plaintiff it was provided that the $1,000 should be taken out of the first payment due to the defendant, and that it should be given to E. A. Lovell, who had charge of the money matters for Mrs. Stafford, and who, as trustee, was to pay the amount to the plaintiff when the first tier of beams was on. The defendant was a party to this contract, as appears from the memorandum appearing at folios 56 and 57, whereby he agrees to pay to the plaintiff the sum of $1,000 out of his first payment; and also agrees that Mr. Lovell shall hold it in trust, and pay it to the plaintiff when the first tier of beams is on.

E. A. Lovell, above referred to, called as a witness on the part of the plaintiff, testified that he was familiar with the condition of these buildings referred to on or about the 29th day of September, 1890. "The first tier of beams was on the six houses at that time. * * * When the first tier of beams was upon the six houses, according to Mr. Altieri's or Mrs. Stafford's contract, I drew a check. * * * I drew this check for $1,000 upon the Union Trust Company to Pietro Altieri & Brothers, and delivered it to Pietro Altieri, the defendant, and wrote upon the back of it, 'Pay to the order of Frederick Haas,' and then Mr. Altieri signed, 'Pietro Altieri & Brothers,' and then I delivered it to him * * * upon the same day the check bears date. I had a conversation with him when I delivered it to him, as I was trustee in this transaction, and wishing to carry out what I agreed to do, and which was to deliver to Mr. Haas $1,000. I asked Mr. Altieri, in order to allow me to carry out the arrangement, which I had agreed to do, to deliver the check to Mr. Haas. He said, 'I will see him this evening, and deliver the check to him.' So I gave it to him after I obtained the receipt for it. *Question.* You gave him the check upon the promise by him to you that he would deliver it to Mr. Haas, acting as messenger for you? *Answer.* Yes, sir, as I understood it."

Frederick Haas, the plaintiff, testified: "The day after Mr. Altieri received the check he came to my house * * * and told me he had the

check. I said: 'That is very good. That is what I want.' He said, 'But I won't give it to you.' I said, 'Why?' He said, 'I want my balance first.' I said, 'Then I have to look to Mr. Lovell.' *Question.* Did you demand the check from him? *Answer.* Yes, sir. He did not give it to me. I never received any money on that check."

The check referred to is as follows:

"NEW YORK, Sept. 29, 1890.

"Union Trust Company of New York, pay to the order of P. Altieri & Bros. one thousand dollars.                    E. A. LOVELL.

"$1,000."

[Indorsed:] "Pay to the order of Frederick Haas.

"PIETRO ALTIERI & BROS.

"PIETRO ALTIERI."

The defendant, Altieri, testified: "*Question.* When Mr. Lovell gave you this check, what did you say to him about it? *Answer.* He gave me two checks for $1,000 each, and said: 'Now is the time you have got to give a $1,000 to Frederick Haas.' I said: 'I don't believe I will give it to him at present, because the building is stopped.' Then he asked me to indorse the check, and I said: 'If you want me to indorse it upon the back, I won't do it.' Then he wrote upon the back himself, 'Pay to the order of Frederick Haas,' and I took the check in my hand and said: 'Well, I will take this check, and I will go to Frederick Haas, and suggest to him to go on and put the beams upon the rest of the houses, by which I could reach my payment; and, when that is done, I will give it to him.' Mr. Lovell said: 'You take it that way, but if you do not give it to him I will stop its payment in the bank.' So I went up to Mr. Haas, and said to him: 'If you will agree with me to go on with the work, so that I get my $1,000, I will give you this check.' He said: 'No, I will not agree to anything of that kind. If you have the check, leave it with me.' So I went away, and went to the bank. I struck out the words upon the back, and I deposited it in my bank; but it was never paid to me. I have never received a dollar upon it. Upon the 29th of September, 1890, I signed the receipt shown me for $2,000, from Mr. Lovell. That $2,000 which I received on that day, was received in two checks. *Question.* Did that include the $1,000 check upon which there was the indorsement, 'Pay to the order of Frederick Haas'? *Answer.* Yes, sir. He (Lovell) testified that he gave it to me upon the condition that I was to deliver it to Mr. Haas; but I say that I said that I would not do it. * * * I think I had the check in my possession when this case was commenced. I did give it back to Mr. Lovell, but that was some months after the commencement of the suit. *Q.* Some months after this suit was commenced you had some adjustment of your affairs with Mr. Lovell on account of the claim against those houses, and upon that adjustment you gave him back this check upon that settlement? *A.* He settled my bill, and I gave him back the check."

A notice under the mechanic's lien law was filed in the county clerk's office on November 28, 1890, by Frederick Haas, the plaintiff herein, against Eva Stafford, for $4,000. A satisfaction of the lien, dated and executed on December 16, 1890, was filed on January 26, 1891. A written demand was made by the attorneys for the plaintiff herein upon the defendant for the $1,000 check in question.

The plaintiff testified that "the first tier of beams was on completely; the second, third, and fourth tiers were up on four houses, as far as the walls were ready. We could not put up any more, because the walls were not up. I had all my beams upon four tiers ready for all to be put in their places. The only reason I could not put them up was because the masons had not the walls up. * * * When Altieri paid me the $1,000 he asked me if I was ready to proceed with the work, and I told him 'Yes.' I did not proceed, because nothing was ready, and therefore I could not proceed."

· John Hausman, called on behalf of plaintiff, testified that he was a framer. That he worked for the plaintiff. That the reason that the second and third .tier of beams were not put upon the other houses was because the walls were not ready. The beams were ready. They were lying upon the street. That he went there for two months, and that the walls during that time were not put up any higher.

The trial justice, in his charge, fully and fairly submitted the case to the jury. The question of fact upon which the jury were to pass was whether the check in question was or was not converted by the defendant. Upon this question the trial justice charged that, if the jury believed the evidence offered on the part of the plaintiff, the moment the defendant failed to deliver the check to the plaintiff he was guilty of conversion, and the plaintiff, under such state of facts, would be entitled to recover. The jury having found, upon the questions of fact submitted to them, their verdict for the plaintiff, evidently believed the testimony offered on the part of the plaintiff, and we find no good reason for disturbing their verdict. We have examined the exceptions taken by the defendant's counsel, and find no merit therein.

Judgment and order affirmed, with costs to the respondent.